JOSEPH A. NORWOOD *v.* LEWIS THORP.

By the effect of the statute which suspends the Code of Civil Procedure, the proceedings of the latter as to docketing *such judgments as are taken in the Court where docketed,* are suspended ; and the 18th Rule of practice laid down by the Supreme Court (63 N. C., 669) operates to make all judgments during any term relate to the first day of such term.

Such relation takes effect even where the Judge fails to open Court upon the first day.

The provision (C. C. P. s. 396,) that where the Judge fails to appear at any term until the fourth day thereof inclusive, the sheriff shall adjourn the Court until the next term, does not avoid the acts of any term where, upon the non-appearance of the Judge, the sheriff *did not* in fact adjourn the Court, and the judge afterwards, .(*here,* in the second week) actually appeared and held Court.

(*McAdoo* v. *Benbow,* 63 N. C., 461, approved.)

CASE submitting a question in difference, decided by *Tourgee, J.,* at Spring Term 1870, of PERSON Court.

The question was, whether there were any priority between judgments taken as follows : The Fall Term of Person Court 1869, began by law upon the 6th Monday after the first Monday of September, being the 18th day of October, but the Judge did not attend until the 7th Monday, being the second week of the term, he having previously directed the sheriff to adjourn the Court until that day. The plaintiff's judgments were taken at that term, and were certified

as docketed on the 26th day of October. The defendant's judgment had been rendered at Fall Term 1869 of Granville Court, and was docketed in Person on the 18th day of October 1869.

Execution issued upon all such judgments, and an amount of money was raised thereupon that was insufficient to satisfy all.

The plaintiff claimed that his judgments were to be taken as docketed upon the 18th day of October, and moved that the record be amended so as to show this fact; and that thereupon, the money which had been raised by the sheriff upon the above judgments, should be applied to all, *pro rata.*

The defendant claimed that the judgment recovered by him, was to be satified in full, before any part of the money should be applied to those in favor of the plaintiff.

His Honor gave judgment in favor of the defendant, and the plaintiff appealed.

*Graham,* for the appellant.
*Venable, contra.*

PEARSON, C. J. His Honor fell into error, because, as it would seem, he did not fully comprehend the extent and the importance of the change made in the Code of Civil Procedure by the statute of March 16th 1869, entitled "An act suspending the Code of Civil Procedure in certain cases;" and particularly, by the enactment "writs of summons shall be returnable to the regular terms of the Superior Courts." The effect of this enactment, according to the construction given to it by this Court, after much consideration, in *McAdoo* v. *Benbow,* 63 N. C., 461, is to repeal so much of the Code as confers jurisdiction on the Clerk "to give judgments," and to restore the old mode of procedure, by which all judg-

ments are rendered in term time,—the Clerk acting simply as the instrument of the Judge in making entries, according to the course of the Court. The Clerk is no longer a subordinate Judge, but is divested of all judicial functions in civil actions, and is simply a clerk; except in regard to matters pertaining to the functions of "a Judge of Courts of Probate," which before had been exercised by the County Courts. So that all judgments are now entered in term time, as was heretofore the course of the Court, and are subject to the principles and rules which had been adopted and acted upon in furtherance of justice.

According to the Code, by the operation of sections 144, 252, 253 and 254, the Clerk is directed to keep a judgment docket, which is to set out among other things, all final judgments "with the *dates* and *numbers* thereof." If the Code had been allowed to go into operation in this respect, so as to treat judgments as rendered in vacation by "the Court," meaning the Clerk, it would have followed that every judgment would take priority according to its date and number on this judgment docket, and would have introduced entirely a new order of things. But the Code has been modified in this particular, and the effect of the statute referred to, is, to restore the old mode of procedure in respect to judgments rendered in term time; leaving these sections to apply only to judgments rendered in some other County, and sent to the Clerk to be entered upon his judgment docket. Such docketed judgments take priority according to dates and numbers, in order to give effect to this new feature introduced by the Code of Civil Procedure, which is not affected by the statute referred to, and leaving likewise the new mode of bringing up appeals to be governed by the Code.

As all judgments are rendered in term time according to this mode of procedure, it follows that this Court had power

to make rule 18, "Rules of Practice," 63 N. C., 669 : "All judgments shall be docketed during the term, and shall be held and deemed to be docketed on the *first day of the term.*" This was nothing new, but simply an affirmance of an ancient principle of the common law, adopted in furtherance of justice, to give fair play,—to prevent an indecent rush to get a judgment docketed first, and to cut off all chance for favoritism on the part of the Clerk. The same principle applies to legislative proceedings, and has been applied very beneficially to deeds, by holding every deed to be registered as soon as it is delivered to the register of deeds.

2. It was insisted, on the argument, that, as his Honor did not in fact open Court until Monday of the second week of the term, allowing the doctrine of relation, judgments rendered during the second week can only be considered as docketed on the first day of that week.

We do not accede to this proposition. The Constitution fixes a term two weeks, and ordains what shall be the first day of the term; and according to the doctrine of relation, every judgment is deemed to be entered on that day, with the limitation established by *Whitaker* v. *Wesley*, 74 E. C. L. 48. This conforms to the precedents : "Be it remembered that at a Superior Court *begun* and *held* at the Court House, &c., on the sixth Monday after the first Monday in September," &c.; as if every thing, in contemplation of law, was done on the *first* day of the term. The idea of dividing terms so as to have some records to set out the sixth Monday, and others the seventh Monday, is a novel one, and would tend to infinite confusion. This is so clear that we hold it to have been the duty of the Judge in the Court below, *ex mero motu*, to have directed the Clerk to correct his entries, so as to make the record of that term conform to the precedents, without regard to the fact that he did not in person open Court until the second week of the term.

3. It was also insisted on the argument, that the judgments of the plaintiffs are void, on the ground that his Honor not being in attendance until after the fourth day of the first week, the term expired; and it was not in the power of the Judge to hold Court on the second week, any more than he could have held Court on the third or fourth week thereafter.

This position, if true, leads to very important results; for it would follow that every thing done on the second week is a nullity—all the judgments in civil actions, void, false imprisonment for what was done on the State docket, and judicial murder if any one was hung. This is a new question. Fortunately, the Judges heretofore have felt it to be a sacred duty to be prompt in their attendance. It would seem that his Honor is still under the influence of certain pre-conceived notions as to the true construction of the Code of Civil Procedure, and has not fully given his adhesion to the opinion of this Court in *McAdoo* v. *Benbow ;* but still thinks that as the Court is to be always open (for certain purposes,) he is in the proper discharge of his duty if he attends at any day during the term, provided always, that he gets to Court in time to dispose of the business on the docket. It is our duty to correct this idea, and to call his attention to C. C. P. s. 396.

The important question which we are discussing, for it involves the validity of every judgment rendered at Fall Term 1869, depends upon the construction of this section of the Code: " If the Judge of a Superior Court shall not be present to hold any term of a Court at the time fixed therefor, it shall be the duty of the sheriff to adjourn the Court from day to day until the fourth day of the term inclusive, unless he shall be sooner informed that the Judge, from any cause, cannot hold the term. If by sunset on the fourth day the Judge shall not appear to hold the term, or if the sheriff

shall be sooner advised that the Judge cannot hold the term, it shall then be the duty of the sheriff to adjourn the Court until the next term." Taking this section literally, it would seem that the term expired at sun-set of the fourth day ; and that the Judge was then *functus officio* in regard to that term, and was not authorized to open Court on the following Monday.

In the construction of statutes, particularly such as are remedial and intended for the furtherance of justice, it is the duty of the Courts to adopt a liberal view, in order to effect that object, and not to stick to the letter, if by so doing the main purpose will be defeated.

One great object of government, is, to afford to the citizens a speedy administration of justice. The particular object of the section under consideration, is, not to compel the citizens, as suitors, jurors and witnesses to be from home longer than is necessary, or after it has been ascertained with reasonable certainty that to require them to remain longer will be of no use. This is a secondary object, and is not to be carried into effect at the expense of the primary one. If this was not the view of the makers of the law, why did not the act provide that the term should absolutely expire at sun-set of the fourth day, *by act of law ?* Such, however, is not the provision ; but it is made the *duty of the sheriff* to adjourn the Court until the next term : so, it is to be done by the act of the sheriff, and not by act of law. If the sheriff had adjourned the Court until the next term, Fall Term 1869 would have been at an end, and all of the " actings and doings " of his Honor on the second week, mere nullities. But the sheriff did not choose to adjourn the Court until the next term, and in excuse for this omission, relies upon the information received from the Judge, that he would appear on the next Monday.

So the term was not put an end to either by the act of

law, or by the act of the sheriff. This may be an instance of letting the matter depend on the act of the sheriff, for, as it turned out, the primary object was effected, although no doubt the secondary object was in some measure disappointed; and many of the good citizens had to complain of being put to much inconvenience, and perhaps loss, by having to stay at Court during the first week, and then being required to come back, in order to wait upon the motions of the Judge.

There is error. This will be certified, and the fund will be divided *pro rata*.

PER CURIAM.                                        Error.