STATE v. SIDNEY MATTHEWS and FRANK HUMPHREYS

*Juror Challenging—Evidence—Practice.*

1. The usual and proper question by which one offered as a juror on a trial for murder is examined on his *voir dire* as to his bias against the defence, "have you formed and expressed the opinion that the prisoner at the bar is guilty?" refers to every grade of unlawful homicide, and obviates the necessity of specially interrogating the juror as to whether or not he has formed and expressed the opinion that the prisoner is "guilty of either murder or manslaughter." Especially is this so when the ordinary formula is explained by the judge, in the presence of the juror offered, as including manslaughter.

2. If there be *any* evidence tending to prove a controverted proposition, and reasonably sufficient to establish it, such evidence should be submitted to the jury.

3. In support of an allegation by the state that one of two prisoners on trial for murder killed the deceased in pursuance of a common design between him and the other prisoner, it was shown that some two or three months before the homicide, the prisoners, M and H, referred to deceased as "a damned rascal;" that on the day of the homicide the prisoner H had a quarrel with deceased in the presence of M; that after said quarrel, and on the same day, H declared in the presence of M that if deceased would fight with him, he would kill him; that some-

27

STATE *v.* MATTHEWS.

hours later, deceased, on his way home from the scene of the quarrel, stopped on the road in front of prisoner H's house and engaged in a contention with another party; that thereupon prisoners came out from the house to the road, and H at once charged deceased with having sworn to a lie against him, and called upon M to "step up" to deceased and prove it; that M did "step up" as directed, whereupon deceased knocked him down upon his knees, M crying out "boys don't let him kill me!" that H then drew a pistol and said, "take care. I'll shoot him," about which time M drew a knife and from his recumbent position, gave deceased a fatal stab; *Held,* that it was proper to submit to the jury the foregoing facts as evidence of the common design alleged, and of express malice on the part of both prisoners.

4. When the solicitor for the state, in the course of his argument, makes an improper remark of so brief a character that it goes to the jury before the court has time to interrupt him, it is sufficient that the judge reprobates the impropriety when he comes to deliver his charge.

(*State* v. *Benton,* 2 Dev. & Bat., 196; *Patterson's case,* 78 N. C., 470; *Williams'*, 2 Jones, 194; *Simpson's*, 6 Jones, 21, cited and approved.

INDICTMENT for Murder removed from Yadkin and tried at Fall Term, 1878, of SURRY Superior Court, before *Graves, J.*

The prisoners were charged with killing one Costin D. Butner and were found guilty of manslaughter. Judgment and appeal. See same case, 78 N. C., 523. The case is sufficiently stated by Mr. Justice DILLARD in delivering the opinion.

*Attorney General,* for the state.
*Messrs. Watson & Glenn,* for the prisoners.

DILLARD, J. The prisoners were tried and convicted of manslaughter at fall term, 1878, of Surry superior court and from the judgment pronounced, an appeal is taken to this court, for alleged irregularity in the formation of the jury which tried them, and for error of the presiding judge in the instructions given, and in the refusal of other instructions requested. In order to understand the matters

complained of and to make the opinion of this court intelligible in relation thereto, it will be necessary to state briefly the material facts as they appear upon the record sent up to this court.

When the jury were being formed, a juror regularly drawn was challenged by the prisoners, and on being sworn to answer touching his competency to serve on the jury, the prisoners proposed to ask him,—whether he had formed and expressed the opinion that the prisoners at the bar or either of them was guilty of either murder or manslaughter; and on objection, His Honor ruled that the question should be put, have you formed and expressed the opinion that the prisoners at the bar or either of them is guilty, remarking at the time that the inquiry in that form covered both murder and manslaughter, and was in accordance with the usual practice in the courts, and to this ruling the prisoners excepted.

We think there was nothing in the ruling of His Honor of which the prisoners have just cause of complaint. It is the undoubted legal right of the parties to any action, whether civil or criminal, to have the matter in issue passed upon by a jury, competent and free from all just cause of challenge; and it is settled law that the forming and expressing of an opinion on the matter to be tried is ground of principal challenge and renders the juryman incompetent. The mode of proceeding, to test the fitness of a person to be of the jury in a capital case, is, according to our observation and experience, to examine him on his *voir dire* as to the formation and expression of an opinion upon the guilt or innocence of the accused, and to elicit that fact, the question is put, generally, if not universally, in the form required by the court below in this case. The manner of putting the preliminary question to the juror in this case is in the same words as was done upon the challenge of the prisoner in the case of *State* v. *Benton,* 2 Dev. & Bat., 196;

and Judge GASTON, in delivering the opinion of the court, speaks of the form in which the question was put, and says it was and had been the practice for many years to put the question in that manner in this state. It is true there is no statute prescribing the formula in which the inquiry as to the formation and expression of opinion is to be made, and it may be that the phraseology of the question as proposed by the prisoners was proper, but without entering into any inquiry whether the departure from the usual form was legally sufficient or not, we hold it was not error of which the prisoners can complain, that the judge disallowed their manner of putting the preliminary question, and required it to be put in the manner and form of universal and long use in capital trials in this state. The judge in requiring the preliminary question to be put in the approved form, explained that the inquiry therein made covered murder and manslaughter, and the jurors would understand that the formation and expression of opinion as to the guilt or innocence of the prisoners referred to both of the grades of homicide, and thus it is perfectly manifest that no injury did or could by possibility accrue to the prisoners.

The facts material to the understanding of the exceptions of the prisoners to the instructions of the judge given to the jury and to his refusal of others are briefly as follows : On the day of the homiside the prisoners, Costin Butner, the deceased, John Carter, and Kennedy Carter were all at Conrad's store, and in the evening the deceased, John Carter and Kennedy Carter went together homeward, and as they went the deceased and John Carter were in a quarrel, and when in the road opposite the house of the prisoner, Frank Humphreys, and about 100 yards distant, they stopped and continued to quarrel, and while they were quarreling, Frank Humphreys and Sidney Matthews came up from Humphreys' house to the road. In a short time Humphreys charged deceased with having sworn to lies against him

and said he could prove it, and called to Sidney Matthews, "come up here," and Matthews went up and Humphreys asked him, "didn't he say it?" and just about that time the deceased struck Matthews and he fell on his knees, and deceased kicked him and Matthews cried out, "boys, don't let him kill me." Thereupon Humphreys said, "take care, I'll shoot him," and put his hand behind him as if about to draw a pistol. While Matthews was down he struck up, but nothing was observed to be in his hand. In a few moments Butner staggered and fell and died.

One witness, Kennedy Carter, testified substantially to the facts above, except that he says after Matthews was knocked down, he ran in front of deceased and that they both had knives in their hands, but did not then use them, and in a moment or so Butner fell down and died.

It was in proof by Frank Matthews that the prisoners some two or three months before the homicide, at Conrad's store, in speaking of the deceased said he was a damned rascal. Andrew Swift proved that at Conrad's store on the day of the homicide the prisoner, Humphreys, in speaking of a matter to him said, "it was some of Butner's damned lies," and late in the evening he and Sidney Matthews came to him and Humphreys said he had cursed Butner and offered to fight him and called on Sidney Matthews to say if it was not so, and Matthews answered it was so. Humphreys repeated he had offered to fight him and if he did he would kill him.

Dr. Hunt testified that deceased was stabbed in the groin and the wound was given by some one prostrate or in a bending position. Matthews after the fight had bruises on his thigh. William Spellman heard the noise and went out and saw Humphreys and deceased standing confronting each other, heard Humphreys curse deceased and say he could whip him, heard a lick and saw a man on the ground; the man rose up and Butner fell and died.

It was in proof that Butner was a large, strong man and violent when drunk, and Matthews was a cripple and weakly and peaceable.

In his instructions to the jury, His Honor explained correctly what constitutes murder, and mitigates to manslaughter, or makes the killing excusable, as done *se defendendo;* and directed the jury that if Matthews, in law, was guilty of no offence at all then Humphreys would not be guilty, and that under no circumstances could Humphreys be found guilty of a greater offence than Matthews; and he gave the special instructions designated 1 and 2 requested by the prisoners, and to this extent no complaint or assignment of error is made.

The prisoners requested an instruction numbered 3 in the case of appeal, in the following words: " That in order to convict Matthews of murder, the jury must be satisfied that he killed the deceased from malice; that there is no evidence of express malice, and that the evidence taken together, if true, rebuts such malice as the law presumes from the killing, and that the jury should therefore only consider whether as to Matthews it is a case of manslaughter or excusable homicide." His Honor refused to direct the jury in the terms of the request, but instructed them that if they should find that the prisoners with a previously formed design went together to provoke the deceased into a fight with one or the other and then to kill him or do him some great bodily harm, and Matthews did inflict the fatal blow in pursuance of such design, then it would be murder in both; that if the common design was to provoke a fight without the intent to kill but only beat the deceased, and in pursuance thereof, both being present and aiding and encouraging each other, and in the heat of passion the deceased was slain, it would be manslaughter in both.   If Humphreys had not entered into any understanding with Matthews beforehand, and happened to be present, and after Matthews got into

the fight gave him encourgement, and Matthews in the heat of passion killed the deceased without necessity to save himself from death, or great bodily harm, then Matthews would be guilty of manslaughter, but Humphreys would not, unless he intended to abet the killing." The prisoners except to the refusal of this instruction, and claim that the judge should have told the jury there was no evidence on which they were at liberty to consider of the question of murder, and thereby limited the consideration of the jury to the question of manslaughter and excusable homicide alone. When this case was heretofore in this court, and to be found reported in 78 N. C., 523, this court on the evidence then sent up declared there was no proof of malice, and that the malice presumed from the killing was rebutted, and there being no evidence of a previous concert and design on the part of the prisoners, it was held that the judge below should have withdrawn from the jury all consideration of the offence of murder. On the last trial, however, there was evidence that the prisoners some two months before the homicide in speaking of the deceased said he was a damned rascal, and on the day of the homicide were together at Conrad's store, and Humphreys then sought to draw the deceased into a fight, and late that evening he spoke of his having offered him a fight, and said in the presence of Matthews that he had cursed the deceased and proved it by Matthews, and declared that if he would fight him he would kill him. That evening the prisoners went together to Humphreys' house and when the deceased and John Carter were quarreling in the road near his house, the prisoners went up to the road and sat upon the fence, and in a short time got down about the same time and went to the deceased, and Humphreys then began by charging deceased with swearing lies against him and called up Matthews to prove it. Matthews went up and something

being then said the deceased struck Matthews and he fell to his knees and the homicide followed immediately.

It 'is settled that if there be evidence tending to prove a fact or matter in issue and reasonably sufficient to warrant an inference of the truth thereof, the court should submit it to the jury whose province it is to weigh and determine its sufficiency to establish the matter in dispute. *State* v. *Patterson*, 78 N. C., 470 ; *State* v. *Williams,* 2 Jones, 194. It is equally well settled, if the prisoners had formed the purpose of wrongfully drawing the deceased into a fight, and accordingly did so, and one of them without provocation slew him, it is murder. *State* v. *Simmons*, 6 Jones, 21. Now the formation of a common purpose of the kind in question is always secret and not often capable of proof otherwise than by circumstances, and therefore whilst the evidence of the alleged concert and common design may be slight we are not prepared to say that it was error to refuse the instruction asked by prisoners, and to submit it to the jury on the question of the offence of murder.

It was asked of the court below to charge the jury in request No. 4, that if Matthews stabbed deceased under circumstances of such apparent danger as to render him excusable on the ground of the right of self-defence they should acquit both, although they should believe that Humphreys himself was seeking a difficulty with the deceased ; and it is assigned for error that the judge failed to give the instruction as requested. The court had already directed the jury that if Matthews was guilty of no offence, then Humphreys was guilty of no offence ; and as to the guilt of Matthews, he had instructed the jury in the first direction, that if Matthews had reasonable ground to believe and did believe that the assault made on him by deceased was made with intent to kill or do him some great bodily harm, he was not bound to retreat, but might kill in his self-defence, and the subject matter of this 4th instruction asked for having been already

given, it is not error of which prisoners can complain that the court did not give it again.

It was asked of the court as set forth in request No. 5 to direct the jury that if the difficulty between Matthews and the deceased was sudden and unexpected to Matthews, that what was said by Humphreys in the previous quarrel between him and deceased should not be considered by them as affecting the guilt of either of the defendants; and it is assigned for error that the court failed to give any directions under the request. The record shows that His Honor in answer to this request instructed the jury that evidence of threats by one would be no evidence against the other, unless there had been a common design, but that evidence of what was said at the time of the killing was a part of the transaction, and if it was in the presence of both parties it would be evidence to be considered of as to both and to have such weight as the jury might think it entitled to. We think no error was committed in this instruction. His Honor had already submitted the evidence to the jury as to the existence of a common purpose and design in the prisoners to bring on a fight with the deceased and to kill him, and the consideration of previous threats was properly guarded and restricted by the court, and as to the consideration of the declarations of Humphreys at the time of the killing, however sudden and unexpected the difficulty to Matthews, the declarations then made by Humphreys were material to show his connection with the killing, and as explaining how Matthews became involved in the fight, and his conduct on the progress of the difficulty; and we hold there was no error of the court in refusing the direction asked and in directing as he did.

It is assigned as error that the solicitor in his argument urged to the jury that the offence of the prisoners was manslaughter at the least, and said in that connection that the punishment for that offence would not be imprisonment for

life in the penitentiary, but might not be greater than the punishment for stealing a pound of rags, and that His Honor did not interfere. It is difficult to see from the record how the judge could have interfered and prevented the utterance. The idea required but few words to express it, and such a statement would be generally complete before the judge could see its tendency or impropriety, and therefore it being communicated to the jury, all the judge could do in such case would be to warn the jury against such an argument in his direction at the close of the case. This His Honor did. He told the jury it was for them to respond to the question of guilt merely, and that the punishment to be annexed was a matter of law to be pronounced by the court; and it thus appears that the prisoners were as well protected against the allusion of the solicitor to the punishment for manslaughter as was possible after the utterance was made. Upon a careful consideration of the numerous exceptions of the prisoners, it is the opinion of the court that no error was committed by His Honor for which a new trial should be granted. Let this be certified that the judgment of the law be pronounced.

PER CURIAM. No error.