STATE *v.* W. W. McDOWELL and others.

*Roads, indictment for failure to repair—Demurrer to Indictment—Appeal.*

1. Where a particular class of persons (here the president, &c., of the Buncombe turnpike company) other than overseers of roads are indicted for not keeping a road in order, the indictment should contain not only an averment " that it was their duty and of right they ought to have kept the said road in repair," (*Patton's* case, 4 Ired., 16) but also an averment of the *particular* duty or duties alleged to have been omitted.

2. An appeal does not lie from the overruling of the defendant's demurrer to an indictment (this being an interlocutory judgment), but in such case the court should require him to plead to the indictment and proceed with the trial, and upon a verdict of guilty the question as to the sufficiency of the indictment can be raised on a motion in arrest of judgment. This rule applies to all criminal actions. But where such demurrer is sustained, the judgment is final and the state can appeal.

(*State* v. *Patton*, 4 Ired., 16 ; *State* v. *Com'rs*, 4 Dev., 345; *State* v. *Fish-blate*, 83 N. C., 654; *State* v. *Bailey*, 65 N. C., 426; *State* v. *Pollard*, 83 N. C., 597; *Com'rs* v. *Magnin*, 78 N. C., 181, cited and approved.)

INDICTMENT tried at Fall Term, 1880, of HENDERSON Superior Court, before *Gilmer, J.*

The defendants demurred to the indictment, and from the judgment overruling the same, they appealed.

*Attorney General,* for the State.
*Messrs. C. A. Moore* and *J. J. Osborne,* for defendants.

RUFFIN, J. This was an indictment against the defendants as president and directors of the Buncombe Turnpike Company for not keeping in repair so much of the road belonging to the company as lies between the Buncombe line and the South Carolina line in Henderson county. The defendants demurred to the indictment and upon the overruling of the demurrer appealed to this court. The indictment is in the following words:

" The jurors, &c., present that W. W. DcDowell, president, and V. Ripley, Mont. Patton, directors of the Buncombe Turnpike road, late of Henderson county, on the 8th day of September, 1879, and on divers days, &c., being president and directors, &c., that part of the Buncombe Turnpike road which lies between, &c., negligently did permit to become ruinous, &c., for want of due reparation thereof, when it was the duty of the said W. W. McDowell, V. Ripley, Mont. Patton, president and directors, &c., to have kept the same in good and lawful repair, and by law and of right they ought to so have done. But they, as president and directors of said public road unlawfully and negligently did permit and still do permit said public road to become ruinous, &c., contrary to the form of the statute, &c."

The indictment is so defective as not to warrant any judg-

ment against the defendants, in case of their conviction by a jury, and therefore their demurrer should have been sustained in the court below.

The charge which it makes against them is the general one, that they, as president and directors of the Buncombe Turnpike Company, did permit a certain section of the road of the company to become ruinous and broken, so that unless there be some public general statute which imposes upon the defendants the duty of keeping the road in repair, it is impossible for the court to see that any offence has been committed.

Were it the case of a common public highway, and the defendants were the overseers thereof, the indictment in its present shape would have been sufficient, for there is a statute which makes it the duty of every such overseer to keep the road allotted to him in good repair; and another, which declares that he shall be guilty of a misdemeanor if he neglect any duty required of him; but there is no law known to this court which imposes upon the defendants, as individuals, any such duty in regard to the road of the Buncombe Turnpike Company.

The statute under which the company was incorporated imposes upon the president and directors certain specific duties, and confers upon them certain specific powers, and requires them to take an oath of office, and there can be no doubt that under the statute which makes every officer indictable for a neglect of duty, and indeed without any such statute, these defendants may be proceeded against in case they have failed to perform any part of their duty, or to exercise any one of the powers conferred upon them. Among the powers given, the president and directors are authorized to demand and receive certain tolls, and to contract with parties for construction and improvement of the road, and to require the road hands living along the line of the road to bestow upon it six days labor in each and every year.

Now if it be that they have done all things which they ought to have done, and all which they were empowered to do, and in spite thereof the road should be in a ruinous condition, the fault would not be theirs, but the company's, for which *it* should be indicted. And on the other hand, if it were the purpose of the state to charge the defendants with a dereliction of any particular duty or duties, the indictment should have been specific in its averments, in order that the defendants might know with certainty what they had to answer, and the court could see from the record that some law of the land had been violated.

As we understand, it was just the distinction between the duty and the liability of the company and the duties and the liabilities of its officers, that was made by the court in the case of the *State* v. *Patton*, 4 Ired., 16, which was a prosecution against the president and directors of this same Buncombe Turnpike Company, and on a similar charge of permitting the road to fall into decay. Judge DANIEL speaking for the court, after declaring it to be the duty of the company to keep up its road, and that therefore the *corporation* was liable to indictment if the road be suffered to become ruinous, proceeds to say : "We also think that the individuals who have been indicted were bound by virtue of their offices, faithfully to exert all their powers and apply all their means, as such officers, to the keeping of the road in order, and that for a default in this public duty they were liable to indictment. But as they were not *absolutely to keep up the road,* they cannot be charged *merely because the road has become ruinous.*" At the same time he pointed out another particular, in which the indictment then under consideration would have been defective even if there had been a statute making it the general duty of the defendants as individuals to keep the company's road in good order, viz: its failure to charge in form that it was "their duty and of right they ought to have kept the said road in repair," &c.

This last defect has been remedied in the indictment now before us, but still the other remains; the indictment fails to give that notice to the defendants and the court, which they are entitled to have of the particular duty or duties alleged to have been omitted. The cases of the *State* v. *Commissioners of Halifax,* 4 Dev., 345, and *State* v. *Fishblate,* 83 N. C., 654, referred to in the brief of defendants' counsel, are all on a line with *Patton's case, supra.*

If, therefore, the cause was properly before us, we should have no hesitancy in sustaining the defendants' demurrer, and it is with some regret we feel ourselves precluded from doing so, by the fact that their appeal was prematurely taken.

The right of appeal to this court is wholly regulated by statute and there is none which gives to a defendant in a criminal action, the right to appeal from an interlocutory judgment. *State* v. *Bailey,* 65 N. C., 426; *State* v. *Pollard,* 83 N. C., 597. If a demurrer to an indictment be sustained, that disposes of the action finally and therefore an appeal for the state will lie, and it is one of the few cases in which the state can appeal. But a judgment overruling a demurrer is purely interlocutory and really so little affects the rights of parties that in the case of the *Commissioners of Wake* v. *Magnin,* 78 N. C., 181, a doubt was expressed as to whether an appeal would lie from it, even in a civil action, and notwithstanding the provisions of the C. C. P., § 299. And it was yielded in that case more because such a practice had grown up than from any sure conviction of its being a right.

After overruling the demurrer, the court should have required the defendants to plead to the indictment and proceed with the trial to verdict and judgment, and then by motion in arrest of judgment the defendants might have raised every objection to the indictment which furnished the grounds for their demurrer, and if denied their motion,

could then have appealed. It is because of this right to present every objection to an indictment by such motion in arrest, that demurrers in criminal actions have been so unusual, and it may be the reason too why the right to appeal from an overruling judgment has been withheld. In allowing defendants in all cases to plead to the indict-ment after demurrer, the practice of the courts in this state differs somewhat from that of the courts of England, for there, in misdemeanors the judgment upon demurrer is final, and it is only in certain felonies that the right to plead ever obtains. Our constitution declares that "no person shall be convicted of any crime but by the unanimous ver-dict of a jury of good and lawful men in open court."

There being error in allowing the appeal, it must be dis-missed.

PER CURIAM.                                             Appeal dismissed.