STATE v. THE WESTERN NORTH CAROLINA RAILROAD COMPANY.

*Buncombe Turnpike Company—Corporations—Evidence— Highway.*

1. A plea of not guilty to an indictment against a corporation is an admission of its corporate existence.

2. As against a corporation, it is competent to establish its organization and existence, to prove that it had officers, exercised corporate functions, and held itself out to the world as such.

3. The act incorporating the Buncombe Turnpike Company (Rev. Stat., 2 Vol., p. 418.) established the road constructed under its provisions "a public highway forever thereafter," and its officers and stockholders cannot relieve themselves of their duties and liabilities to the public by an attempted surrender of their franchises to the Board of County Commissioners. To make such surrender effectual, it must be made to the State in some way authorized by law.

4. Nor will an abandonment by the corporation of its franchises work a discontinuance of the highway.

5. An incorporated railroad company is liable criminally for an obstruction of a public highway, if it permits its engines, cars, &c., to remain thereon for a period longer than is reasonably necessary for their safe crossing.

(*State* v. *McDowell*, 84 N. C., 798, cited and approved).

This was a CRIMINAL ACTION, tried at the October Term, 1885, of the Inferior Court of BUNCOMBE County.

From the judgment upon a verdict of guilty, the defendant appealed to the Superior Court, whence the judgment in the Inferior Court being affirmed, he appealed to the Supreme Court.

The defendant was charged with obstructing a public road and common highway leading from the city of Asheville in Buncombe County towards and into Arden in said county.

The State proved, with a view to show that the defendant had been duly organized as a corporation under the Act of 1880, as charged in the indictment, that it was professing to carry out the requirements of said Act; that there was a railroad known as the Western North Carolina Railroad; that it had agents who issued tickets, received freights and signed receipts in the name of the Western North Carolina Railroad Company. Defendant objected to the introduction of this testimony and the Court overruled the objection. That often there were five or six wagons at a time stopped by the cars from one half hour to three hours and a half, standing across the said highway, which is much traveled. The public road is fifty or sixty yards from the depot at which there is a side track. There is a steep grade beyond the depot, but there is room for cars to stand on the side-track without stopping the road. The Buncombe Turnpike Company had control of the road until about three years ago, when the county took charge and appointed an overseer and hands who have worked it since; that the Buncombe Turnpike Company was chartered in 1824, (Rev. Stat. vol. II, p. 418,) by the State  The charter was attempted to be surrendered by the directors, who had a meeting and agreed to surrender it to the commissioners of Henderson and Buncombe, and authorized the President to carry out this purpose. There was no meeting of the stockholders.

The defendant objected to the introduction of all this testimony, but the Court overruled the objection, and the defendant excepted.

J. R. Patterson, who is the clerk of the Board of Commissioners of Buncombe county, was introduced and testified as follows: That there is the following record of the surrender of the charter of the Turnpike Company: "That the sur-

render of the charter and road of the Buncombe Turnpike Company be accepted. Notice to be issued the supervisors of roads of Asheville and Limestone townships."

The defendant objected to the introduction of this record. Objection overruled, and defendant excepted.

The defendant asked the Court to charge the jury:

1. That there was no evidence that there was a public road and common highway, such as it is indictable to obstruct, leading from the city of Asheville towards and into Arden, as charged in the indictment, and that they should return a verdict of not guilty.

2. That there was no evidence of the surrender by the Buncombe Turnpike Company of its charter and property to the county commissioners; that the testimony that three of the directors had met and authorized the president to surrender the charter and property of the company to the county commissioners was no evidence of its surrender, and they could not consider the same in making up their verdict.

3. That the record or memorandum made by the clerk of the Board of Commissioners of Buncombe county was no evidence of the surrender of the charter and property of the corporation, and that they could not consider the same.

4. That there are but two ways in which a public road and common highway, such as it is indictable to obstruct, can be established in North Carolina, to-wit: 1. By an adjudication that such be established, on petition and notice, &c., by the proper tribunal vested with the jurisdiction to make such an adjudication. 2. By a dedication of the road to the public, which may be actual, or presumed by user by the public for twenty years; and that as there was no proof of an adjudication establishing this road as the statute directs, nor any dedication, either actual or presumed, the defendant is not guilty, and they will return a verdict to that effect.

5. That the Buncombe Turnpike Company having been duly chartered and organized under an act of the General

Assembly, could not surrender its charter and property to the commissioners, for said commissioners have no authority to accept such surrender nor to compel it, and any attempted surrender which may have been made, and any acceptance thereof, and appointment of overseers, &c., by said commissioners are a nullity and not evidence for the jury to consider. That the directors had no authority or power to surrender the charter and property of the corporation; that the only ways in which the charter of the Buncombe Turnpike Company could be annulled would be by a judgment for that purpose of the proper judicial tribunal, the repeal of the charter by the legislature, forfeiture for non-user or other cause; and there being no evidence of such judgment by any tribunal of competent jurisdiction, nor any evidence that the legislature has repealed the charter, the jury will acquit the defendant, it being admitted that the Buncombe Turnpike Company was chartered and organized as stated.

6. That there would be no dedication of this road to the public in such a sense as to make it a public road and common highway, by a user of it by the public, the appointment of an overseers, working it with hands, &c., for three years.

7. That there is no evidence of an actual dedication of this road to the public.

The Court refused to give any of the special instructions, and defendant excepted.

The Court charged the jury as follows:

That to convict the defendant the jury must be satisfied that the road was a public road and common highway, as charged in the indictment, and that such public road and common highway must be established in one of three ways:

1. By actual dedication by the owners of the soil.

2. By an adjudication of the proper Court.

3. By user by the public by overseers and hands working it, without any dedications or adjudications, for the space of twenty years at least.

That if the jury shall find that up to three years ago this road was owned and worked by the Buncombe Turnpike Company, a corporation chartered by the Legislature, then the Court charges them that this is not a public road and common highway, unless it has been actually dedicated by said corporation to the public.

There being no evidence of this road ever having been laid out and adjudged to be a public road and common highway by any court having jurisdiction to make such adjudication, it then becomes the duty of the jury to find whether there has been any actual dedications of the road to the public.

The Court charged the jury, that the meeting of the directors, if they shall find there was such meeting, and the authorizing by them of the surrender of the charter to the county commissioners, is evidence which they can consider in determining whether there was such surrender by the president.

The record which was kept by the clerk of the board of commissioners, and which was introduced in evidence, can also be considered by the jury in determining whether the turnpike company ever made such surrender. If the jury shall believe from such evidence that the Buncombe Turnpike Company made such surrender to the commissioners of Buncombe county, then the Court charged the jury that the county commissioners were the proper tribunal to whom to make such surrender, and the same was an actual dedication of said road to the public, and the same would be from the time of such surrender a public road and common highway, such as it would be indictable to obstruct. That if the jury find that this road is a public road and common highway, then it will be their duty to find whether the defendant has obstructed the same or not.

The Court charged the jury that the defendant has the right to occupy the public roads and common highways of the country which it crosses, so long as may be necessary for it to do so in crossing the same, but it has no right to obstruct them

with its cars for any longer time than is actually necessary for the purpose of allowing it to use the franchise given by its charter.

The Court charged the jury that if they shall find that the defendant obstructed or occupied said road with its cars for thirty minutes, it is guilty of obstructing a public highway. The defendant excepted.

The *Attorney-General*, for the State.
*Mr. Chas A. Moore*, for the defendant.

MERRIMON, J., (after stating the facts). The grounds of defence insisted upon are technical and unfounded. The defendant is indicted for obstructing " a certain public road and common highway." Having pleaded not guilty, its counsel insisted on the trial that the State had not proven that it was a corporation. This was unnecessary, because by its plea of not guilty it admitted its corporate existence and identity by the name specified in the indictment. But if this were not so, there was abundant evidence of its corporate existence. The charter authorizing such a company was put in evidence, and there was other evidence that went to prove that such a company was organized under this charter—that it had officers, a place of business, a railroad, transported persons and freight over its road and held itself out to the world as a corporation by the name specified. Such evidence was competent, certainly, as against the defendant, and sufficient, if believed by the jury.

It was further contended that there was no evidence of such a public road and common highway as that described in the indictment. The State put in evidence the charter of " The Buncombe Turnpike Company," granted at the session of the General Assembly of 1824, (2 Rev. Stats., p. 418). That charter authorized the organization of a corporation

by that name, with power to construct and establish a public turnpike road, and the ninth section thereof provides: "That the said road, with the improvements which shall be made thereon in pursuance of this act, *shall be forever thereafter* taken and considered as a *public highway*, free for the passage of all persons and animals, and carriages of every description, on the payment of tolls imposed by this act," &c. It further provided, "That all hands liable to work on roads in the county of Buncombe, residing within two miles on either side of the road, from the Tennessee line to the top of the Saluda mountain, shall be liable to do six days work in each and every year on the said turnpike road, under the direction of," &c.

The company was authorized to collect tolls as allowed for only thirty-nine years, but it was not contemplated that the road should, at the end of that time, cease to be a public highway; on the contrary, it was intended and provided that it should thereafter "forever" be such a highway, to be kept in repair by the hands so liable to work on it, and as might be otherwise, in the course of time, provided by legislative authority. It was in evidence that such a company was organized, that it constructed the highway intended by the charter, that this road had been in constant use a great number of years, was still in use, and that the road specified and described in the indictment was a section or part of that road. This part of the road has never been abolished or discontinued as such a highway by statute or otherwise.

The Statute (Acts 1850-'51, chap. 147), incorporated the "Asheville & Greenville Plankroad Company," and this company was authorized to occupy and use the turnpike road mentioned above in the way and on the terms prescribed, but this statute did not, nor did it purport, to discontinue the road as a public highway. Indeed, it expressly provided that the road snould be "a public highway," and that the

corporation should continue for fifty years. The statute last cited provides, that it "shall be regarded as a public act," and the courts must therefore take judicial notice of it.

But the statute (Pr. Acts, 1866, chap. 52), abolished "The Asheville & Greenville Plankroad Company," and restores "The Buncombe Turnpike Company," in name and authority, and this company has ever since then been recognized and treated as such company, by the courts and the legislature. *State v. McDowell*, 84 N. C., 798; Acts 1866–'7, ch. 114; *Acts* 1869–'70, ch. 126.

It appeared on the trial, that "The Buncombe Turnpike Company," or certain of its officers, undertook three or four years ago, to surrender its road and franchises to the commissioners of the county of Buncombe. The defendant contended that the company thus abandoned its road, and the county commissioners could not treat and make it a public highway, because it had not been established as such, after it had been abandoned, &c. "The Buncombe Turnpike Company" had no authority to thus abandon its road and surrender its corporate franchises. Such act on its part, in any view of it, was nugatory and void. It could only surrender its franchises to the State, in some way authorized by law. It remains a company, and answerable according to law. If it failed to keep the road in repair, this did not render the road less a public highway, and any attempt to abandon it could not have such effect. The road is made a highway "forever," and this implies that it is and must be such, until the Legislature shall otherwise direct and provide. The road was established, has continuously remained, and still remains a highway, and it so appeared on the trial.

So that the numerous points raised, and instructions asked for and refused by the Court in respect to the character of the highway obstructed, were unnecessary, groundless and outside of any proper view of the case before the Court. It did

39

appear that there was a highway as charged, constituted and established by legislative authority.

It is too plain to admit of serious debate, that the defendant had not the shadow of authority or right to keep its cars standing across the highway mentioned, for from fifteen minutes to three and a half hours, as some of the witnesses testified it did do, and until in the course of such business it could unload its cars of freight at its depot near the highway, and thus prevent the passage of persons traveling on the highway. There is nothing in its charter that in terms or by the remotest implication gives such right, nor is it conferred by any general principle of law. Railroad companies have no right to obstruct public highways over which their roadway passes. They must cross them as promptly as the nature of their trains will, in the orderly course of passage, allow. There is nothing in the nature of their business that renders a different rule necessary or tolerable. What the defendant did was unlawful, a criminal violation of the law, and an arbitrary exercise of power, not applying harsher terms.

The defendant was indictable for the offence as charged. While railroad corporations, and corporations generally, are not capable of committing offences, a necessary quality or ingredient in which is the criminal intent, still they are indictable for such acts of misfeasance, as constitute nuisances, without regard to the intent. *Ang. & Ames. on Corp.*, §§394-396; *Mor. on Pr. Cor.*, §94; 1 *Bish. on Cr. Law*, §505.

We have not adverted to several of the alleged errors assigned, because they have reference to immaterial matters. What we have said disposes of all that were in effect material. It is unnecessary and useless to go further.

We are of opinion that the judgment should be affirmed, and to that end let this opinion be certified to the Superior Court.

No error.                                                    Affirmed.