STATE v. STEPHEN TURNER, et al.

*Judge— Appointment — De Facto Judge — Conspiracy— Evidence—Co-conspirator, Acts and Declarations of— Indictment—Proof of Incorporation of Foreign Corporation.*

1. The inhibition contained in Section 11, Article 4 of the Constitution, applies neither to the holding by any judge of the superior court of one or more regular terms of said court by exchange with some other judge, and with the sanction of the governor nor to the holding of special terms under the order contemplated in said provision.

2. A judge of the superior court who presides in another district by appointment of the governor, is a *de facto* judge of the court so held, and all his acts in that capacity are valid.

3. Where the unlawful act, in furtherance of a conspiracy to defraud, is done in the State where the indictment is found, the conspirators who participated only in the design may be tried without joining in the indictment the perpetrator of the overt act.

4. Where, in a prosecution of several defendants for conspiring to defraud, evidence of a common design is shown, testimony tending to prove the unlawful acts of persons not indicted, in furtherance of such design, is competent.

5. In a prosecution for conspiracy to defraud insurance companies, a witness for the state testified that he was the agent of

defendants to fraudulently obtain insurance on the lives of diseased or aged persons, and find purchasers for the policies who would keep the premiums paid ; that one B., who was not on trial, " was also the agent of the defendants ; that they all said he was " ; and that witness saw B. offer to sell a policy on the life of one M.;   *Held*, that the declarations of B., made after the entry of defendants into the conspiracy, and up to the time when the overt act was committed, were admissible against defendants.

6. Where an indictment alleges the ownership of property by a corporation, it is sufficient to show that the corporation carried on business under the corporate name set out in the indictment, without producing the certificate of incorporation, or a copy thereof, in the private acts published by authority of the State.

7. A copy of the charter of a foreign corporation, certified by the Secretary of the State where it was incorporated, under his official signature and the state seal, is admissible in North Carolina to prove the fact of incorporation. *Barcello* v. *Hapgood*, 118 N. C., 712, followed.

INDICTMENT for conspiracy to defraud, tried before *Graham, J.*, and a jury, at December, 1895, Special Term of the Superior Court of Jones County, to which it had been removed from the Superior Court of Carteret County.

When the case was called for trial the Solicitor entered a *nol pros.* as to the defendants Stephen T. Turner and W. H. Turner.   The defendants objected to the trial of the said action by his Honor, *Judge Graham*, upon the ground that he was not authorized to hold said special term of court, for the reason that he had held the regular term of said superior court in October, 1895, upon assignment of the Governor upon an exchange of courts with *Judge Green*, who was regularly riding the sixth district, and that no judge could be assigned to hold court in any district oftener than once in four years.   The objection was overruled, and the defendants excepted.

The defendants thereupon objected to the trial of said

STATE *v.* TURNER.

action upon the ground that the transcript from the superior court of Carteret county was defective. The judge and the solicitor requested the defendants to assign the grounds of objection. The defendants' counsel stated that they had none to assign at that time, as they had had no opportunity to inspect the transcript carefully. The objection was overruled and the defendants excepted.

Upon the trial the State offered David Parker as witness. Upon his examination he gave a full, detailed account of his connection with the defendants for a number of years previous, and of their plans and methods of together cheating and defrauding the insurance companies, in which the said David Parker explained that he was the agent of the said defendants, to work up their business for them, and that when a policy had been fraudulently obtained upon the life of diseased or aged persons, he, the said David Parker, should procure a purchaser for it, who would take it and keep the premiums paid on it. He then stated that William (Bill) Fisher was also the agent of the defendants; that they all said he was. Among other things he testified as follows : " I saw Bill Fisher offer to sell a policy in the Massachusetts Life Association on the life of Melissa Guthrie." The defendants objected to this testimony. The objection was overruled and defendants excepted.

The said witness also testified among other things as follows : "Fisher said afterwards he sold a policy on Melissa Guthrie to Moore, and got money for it." The defendants objected to this testimony. The objection was overruled and defendants excepted.

The State also introduced one Rebecca Ivey as a witness who, among other things, testified as follows : " Bill Fisher first told me down town about the insurance on my life." The defendants objected to this testimony on the ground that it was hearsay and incompetent and a state-

ment by Fisher who was not a defendant. The objection was overruled, and defendants excepted.

The State offered in evidence a certified copy of Articles of Incorporation of the Mutual Benefit Life Association and of the other companies, which the defendants were alleged to have conspired to cheat. Defendants objected to this evidence on the ground that it was not properly certified and authenticated under the acts of Congress. The objection was overruled and defendants excepted.

The State offered Mr. Ripley as a witness, who testified as follows among other things: "Live in Boston. Am traveling inspector for the Bay State Mutual Benefit Association. They hold themselves out to be an Insurance Company, and do a regular business. I know the officers." Objection by the defendants. The objection was overruled and defendants excepted.

"The National Life Insurance Company holds itself out to be an Insurance Company and do business." Objection by the defendants. The objection was overruled and defendants excepted.

"Know the Massachusetts Benefit Association. They hold themselves out as an Insurance Company and do business."

Upon the conclusion of the testimony, by consent of the counsel for the State and the defendants, the case was submitted to the jury without argument. The judge in charging the jury after recapitulating testimony and instructing them upon the law, proceeded to state to the jury at length certain contentions of companies as contentions made by the State, and followed it by explaining the defendants counter-contentions and plea of not guilty, and instructed the jury upon the doctrine of reasonable doubt in favor of the defendants.

The defendants assigned, as error, error in the judge in

presenting to the jury an argument of facts on behalf of the State, when none had been made by the State's attorney. The jury returned a verdict of guilty, and from a refusal of a motion for a new trial the defendants appealed.

The certificate of incorporation of the Massachusetts Benefit Association, one of the prosecutors, was signed by the Secretary of the Commonwealth of Massachusetts in his official capacity and sealed with the seal of the Commonwealth.

*Attorney General*, for the State.
*Messrs. Clark & Guion* for defendants (appellants).

AVERY, J: The inhibition contained in the Constitution (Art, 4, Sec. 11) applies neither to the holding by any judge of the Superior Court of one or more regular terms of said court by exchange with some other judge and with the sanction of the Governor, nor to the holding of special terms under the order contemplated in Section 913 of *The Code*. *State* v. *Lewis*, 107 N. C., 967; *State* v. *Monroe*, 80 N. C., 373; *State* v. *Speaks*, 95 N. C., 689. The intent of the framers of the Constitution was to change the then existing system under which all of the courts of a district were generally held by a resident judge, so that the regular ridings of a whole district or circuit by any given judge would not occur oftener than once in four years. In case of holding specified terms by exchange or special terms by assignment, it is left to the Chief Executive to give or withhold his assent, and it must be assumed that he will exercise his discretionary power of selecting and assigning those who shall hold special terms with an eye to the best interest of persons directly interested, but if there were any grounds for doubting the authority of the Governor to issue a commission to the judge who presided, and to thereby constitute him

a *de jure* officer in the discharge of that duty, the fact that the Governor appointed him and the public submitted to his authority constituted him *de facto* judge of the court which he held, and rendered all of his acts in that capacity as binding and valid as if he had acted *de jure*. *State* v. *Lewis, supra*. Were it otherwise the public would be subjected to the hazard of having all of the adjudications of a court presided over by an incumbent judge acting by virtue of a commission declared invalid in all cases where, after a course of litigation, the lawful right to his office is declared to be in a contestant. An illustration could be found in our own judicial annals in a case where Judge Wilson was commissioned as judge of the superior court, but was ultimately, and, after holding a number of courts, ejected from the office under the decision of this court in *Cloud* v. *Wilson*, 72 N. C., 155.

David Parker, a witness for the State, " gave a full and detailed account of his connection with the defendants for a number of years previous, and of their place and methods of together cheating and defrauding the insurance companies." He explained " that he was the agent of the defendants to work up their business for them, and that when a policy had been fraudulently obtained upon the life of diseased or aged persons, he, Parker, was to procure a purchaser for it who would take it and keep the premiums paid up on it." Parker then testified " *that William* (Bill) *Fisher was also the agent of the defendants, that they all said he was.*" Among other things Parker was allowed to testify as follows : "I saw Bill Fisher offer to sell a policy in the Massachusetts Life Association on the life of Melissa Guthrie." The defendants excepted to the admission of that testimony after objection to its competency. The defendants were charged in the indictment with combining and conspiring to cheat the Massachusetts Benefit

Life Association and others of divers large sums of money. William Fisher was not a defendant, and the defendants contend that his declarations were erroneously admitted as evidence against them.

The same rules of evidence that govern the trial of other criminal offences apply when the indictment is for conspiracy. But there is a marked distinction growing out of the manner of their application. Ordinarily it is incumbent on the prosecution to prove participation in an act, but on trials for conspiracy the State must show participation in a design, and the facts in issue are:

(1) Whether there was an agreement for an alleged purpose.

(2) Whether a defendant charged participated in the design, and

(3) Whether the common purpose was carried into execution.

Here, the testimony tended to prove an agreement between the defendants to constitute Fisher (who is not indicted) their agent to do the same unlawful and fraudulent acts that the witness Parker had been doing in furtherance of a common purpose to cheat certain insurance companies, and to show that the agreement, which they " *all said* " they had made with Fisher, culminated in similar covinous acts. All who aid, abet, counsel or procure others to commit misdemeanors are principals. 1 Roscoe Cr. Ev. Star, p. 189. Conspiracy is under the law of North Carolina a misdemeanor. *State* v. *Jackson*, 82 N. C., 565. When once evidence of a common design is shown, and two or more of the conspirators are indicted and on trial, testimony tending to prove the unlawful acts of a person not on trial, or not indicted, in futherance of such purpose, is clearly competent. Those who aid, abet, counsel or encourage, as well as those who execute their designs, are

conspirators, and certainly where the unlawful act is done within the limits of the State in whose courts the indictment is found, as in our case, the conspirators, who only participated in the design, may be tried and punished without joining in the indictment the perpetrator of the overt act shown.

There was evidence reasonably sufficient, if believed, to warrant the inference of a conspiracy, and it was properly left to the jury to pass upon its sufficiency. *State* v. *Matthews*, 80 N. C., 417 ; *State* v. *Patterson*, 78 N. C., 470. Meantime, it was the province of the court, upon hearing it, to decide that it rendered competent not only proof of the acts done in pursuance of the common design by a co-conspirator, even though not on trial (*State* v. *George*, 7 Ired., 321) but his declarations made after the entry of the defendants into the combination, and up to the time when the offence was committed. *State* v. *Anderson*, 92 N. C., 732. When the common design has been proved, the act of any one of the conspirators in furtherance of it may be shown by any competent evidence. *State* v. *George*, *supra*. It is competent to show a criminal act by confession of a party as well as by means of direct proof by the testimony of others. While the declarations of Fisher as to the participation of the defendants, either in the purpose to commit the offence or the act of selling the policies, if made after the sale, would have been clearly inadmissable (*State* v. *Dean*, 13 Ired., 63), the State was not precluded, after laying the foundation by showing the declarations of the defendants that he was their agent for that purpose, from proving his naked confession of the act of selling certain policies, as, according to the testimony of Parker, he had agreed to do, for the benefit of the defendants, and had subsequently attempted in his presence to do.

It has been held that for the purpose of proving the ownership of property by a corporation, when charged in an indictment, it is not necessary to produce the certificate of incorporation, or a copy of it in the private acts published by the authority of the State, but that it is sufficient to show that the corporation carried on business under the corporate name set forth in the indictment. *State* v. *Grant,* 104 N. C., 908 ; *State* v. *Railroad,* 95 N. C., 602. But, if it were conceded that the testimony of the witness Rippy, that the companies mentioned held themselves out as insurance companies, was insufficient, we hold that the certificates of incorporation were clearly competent under the rule laid down in *Barcello* v. *Hapgood,* 118 N. C., 712, 730. For the reasons given, the judgment of the court below is affirmed.

Affirmed.