308          WISCONSIN REPORTS.

The State of Wisconsin ex rel. vs. Williams.

# THE STATE OF WISCONSIN, ex rel. JAMES H. KNOWLTON,

## *vs.*

## JOHN K. WILLIAMS.

### MANDAMUS.

Courts take notice of the accession to office of officers under the constitution, and while they remain in office and exercise the duties thereof, regard them as officers *de facto.*

Generally, as respects third persons, the acts of an officer *de facto* are to be recognized as valid.

Where a governor continued to hold over, after the expiration of his term, and after taking of the oath of office by his rightful successor, on the assumption of his reelection, and under the certificate of the state canvassers, and so continued the acting governor, his approval of an act of the legislature was held valid, as the act of an officer *de facto.*

It is a sufficient compliance with the constitution, which provides that no county seat shall be removed until the point to which it is proposed to be removed shall be fixed by law, and a majority of the voters of the county, voting on the question, shall have voted in favor of its removal to such point, if the point to which it is proposed to be removed, is fixed by the law, and the voters vote in favor of the removal, before the removal takes place in fact.

By the term "voters of the county," in section 8, article 13, of the Constitution, in reference to the removal of county seats, is meant, those who have a right to vote at the elections held for state officers; and an act of the legislature which prescribes a qualification for an elector under its provisions, additional to those prescribed by the constitution, as a previous residence of thirty days in the town where the elector offers his vote, is repugnant to the constitution, and void.

ON the 14th day of May, 1856, James H. Knowlton, the relator, in *propria persona*, filed in this court a motion for an alternative *mandamus* directed to John K. Williams, the respondent, commanding him to hold his office of clerk of the Circuit Court, in and for the county of La Fayette, at the village of Shullsburg, in said county, the county seat thereof, "or show cause why he doth not do so," on a day to be designated by the court; which motion was supported by the affidavit of the relator, filed

simultaneously therewith, setting forth, among other things, the grounds of said motion and application, as follows:

That the relator is a resident freeholder and elector of the town of Shullsburg, in the county of La Fayette, in the state of Wisconsin.

That by virtue of the constitution of the state, and of an act of the late territorial legislature, entitled, " An act to authorize the voters of La Fayette county to vote for locating the county seat thereof," approved March 11, 1848, the county seat of said county was established at the village of Shullsburg, where it now is.

That John K. Williams is the clerk of the Circuit Court in and for said county, and the relator has requested him to hold and keep his office of clerk, at the said village of Shullsburg, as by statute he is required, in the office (in the courthouse of said county) provided by the county board of supervisors, for that purpose; but that said John K. Williams doth not hold or keep open the said office of the clerk of the Circuit Court in and for said county, at said Shullsburg, but, on the contrary, he holds and keeps said office at a place called Avon, nine miles from Shullsburg.

That deponent is informed and believes that the said John K. Williams neglects and refuses to hold his said office of clerk at Shullsburg, and holds and keeps the same at Avon, as aforesaid, under pretence that the county seat of said county is at Avon, by virtue of a majority vote of one hundred and fifty-nine, on a vote taken on the first day of April, 1856, by those of the electors of said county voting on the question of the removal of the county seat from Shullsburg to Avon, under a bill, or pretended act of the legislature of Wisconsin, entitled, " An act to provide for the removal of the county seat of La Fayette county," purporting to have been " approved March 20, 1856," by one William A. Barstow, and which pretended enactment is to the effect following: [The act is omitted here for obvious reasons, except so much and such part thereof as becomes material by the decision of the court, which is] " § 3. That no person shall be deemed qualified to vote upon the question of

the removal of the county seat provided for in this act, unless he shall have resided in the town where he offers to vote at least thirty days (and who is not a permanent resident of said county) previous to the first day of April, A. D. 1856." [The day on which it was provided by said act said election should be held.]

That the said William A. Barstow was, and acted as, governor of the state of Wisconsin for two years ending on the seventh day of January, 1856, since which time he has not been such governor; on which said seventh day of January, 1856, his said Barstow's, successor to the said office of governor, qualified, by taking the oath of office according to the statute and the constitution of the state; the said successor being Coles Bashford, who was duly elected, &c., and who, by virtue of said election and qualification became and was, from said seventh day of January, 1856, governor of the state of Wisconsin.

That the said pretended statute or act providing for the removal of the county seat of La Fayette county, passed the two houses of the legislature on or about the nineteenth day of March, 1856, but was not presented to, nor ever received the approval of, said governor, Coles Bashford, nor was ever returned by him with his objections thereto to the house wherein said bill originated and was passed and became a law, according to the provisions of section ten of article five of the constitution of the state: wherefore deponent says he is advised and believes said bill did not, for the reason above stated, become a law of the state, &c.

That deponent is advised and believes that the above recited bill or enactment, entitled "An act to provide for the removal of the county seat of La Fayette county," even if it be conceded that the same is a constitutional and binding act, save and except the provision in this case, namely: "And if a majority of all the votes cast on that subject at such election, be in favor of such removal, then said village of Avon shall be the permanent county seat of said county," does not, nor does any other statutory enactment have the effect to remove the said county seat, for the reason that the above last-recited words make the location or establishing of the said county seat depend upon the vote

upon the question of removal, and not upon the ultimate exercise of legislative power.

That the said above recited bill or enactment is unconstitutional and void for the reason that by the terms, force and effect of the third and fourth sections thereof, no person was qualified or permitted to vote upon the question of the removal of the county seat provided for in said enactment, who had not resided in the town where he offered his vote at least *thirty days previous* to the "first day of April, A. D. 1856," and who was not a permanent resident of said county. That no such qualifications or restrictions exist in the constitution of the state ; nor is the legislature empowered to impose any such upon the electors, &c.

The answer or return of the said John K. Williams admits that the relator is a resident freeholder and elector of the county of La Fayette, and that respondent is the clerk of the Circuit Court in and for said county.

That the village of Shullsburg, by virtue of the constitution and the territorial act mentioned in the affidavit of the relator, is the county seat of said county, unless the same has been removed as hereinafter insisted upon.

That said Knowlton hath requested respondent to hold and keep open his said office at Shullsburg, in the office provided by the supervisors of the county for that purpose, and that he hath disregarded said request, and does keep and hold his said office at the place called Avon, which is about nine miles from said Shullsburg.

And, that he holds and keeps his office at said Avon, because the county seat of said county has been removed from said Shullsburg, and fixed and established at said Avon, by a majority vote of one hundred and fifty-nine, on a vote taken on the first day of April, 1856, by those of the electors of said county, voting on the question of the removal of the county seat from the aforesaid village of Shullsburg, under and by virtue of an act of the legislature of said state, entitled "An act to provide for the removal of the county seat of La Fayette county," approved March 20, 1856, by William A. Barstow.

Respondent further admits that said William A. Barstow was

governor of said state for the term of two years : but whether he ceased to act as governor till after the date of his approval of the act above mentioned, he is not advised; but he insists that on the seventh day of January, 1856, by virtue of the said election and qualification recited by the relator, the said Coles Bashford did not have legal possession of the office of governor, &c.

And he further insists that by virtue of the act recited in the relator's affidavit, and of the vote of the electors of said county, taken under the same, the county seat of said county, is removed from Shullsburg to Avon, and therefore he cannot hold and keep his office at Shullsburg, &c., as commanded in the writ.

To this answer, relator filed a general demurrer.

*Jas. H. Knowlton*, relator, *in propria persona.*

*Chas. Dunn*, for respondent.


*By the Court*, WHITON, C. J.   The matters principally relied upon by the relator, to sustain his demurrer to the return of the respondent to the alternative writ of mandamus, are, 1st, That the act to provide for the removal of the county seat of La Fayette county, never became a law, for the reason that it was not approved by the governor of the state; nor passed by the Senate and Assembly by the requisite number of votes, after the bill was returned to the house in which it originated, by the governor, with his objections thereto.   2d. That the act provides for the removal of the county seat from Shullsburg to Avon, in case a majority of the votes cast on the question of the removal, shall be in favor of the removal, without any further action on the part of the legislature, and, 3d. That a "majority of the voters of the county voting on the question" of the removal of the county seat, have not voted in favor of its removal from Shullsburg to Avon.

The fact assumed by the relator to sustain the first position taken, is, that William A. Barstow, who approved of the act in

question, was not the governor of the state at the time of its approval, but that Coles Bashford, who now has possession of the office, was at that time the lawful governor. We do not think this position can be sustained. Courts take notice of the accession to office, of officers of this description without proof. 1 *Greenleaf Ev.* § 6. And although this does not prevent courts from inquiring into their right to hold office, by an information in the nature of a *quo warranto*, still, while they remain in office, courts take notice of the fact, and regard them as officers *de facto*.

The general doctrine that the acts of officers *de facto*, while in office, are good as to third persons, we suppose to be too well settled to require the citation of authorities to support it; and we cannot perceive how this case differs from the ordinary one of an office unlawfully held by one, to the exclusion of the person who is lawfully entitled to it. In the case of *The State ex rel. Bashford vs. Barstow*, decided at the last term of this court, it was contended that the office of governor was something more than an office, as that term was used in the constitution. This argument was pressed upon the court, for the purpose of showing that we had not jurisdiction to inquire by what right the respondent held the office. It was conceded, that if this was strictly an office under the constitution, the jurisdiction existed; but it was contended that the governor constituted a separate department of the goverment, and for that reason was beyond the jurisdiction of the court. We, however, decided that the office of governor was strictly and properly an office, under the constitution, and held that the court had jurisdiction to inquire by what right the respondent held it, and exercised its duties. We are entirely satisfied that this decision was correct, and must therefore apply to the acts of Gov. Barstow, while he had possession of the office, the rule uniformly applied by courts to the acts of officers *de facto*.

We must hold, therefore, that the act of the legislature is not void, for the reason that it did not receive the approval of the governor.

We do not think that the act of the legislature, in question, is

void, for the reason that it provides for the removal of the county seat, from Shullsburg to Avon, in case a majority of the votes given on the question of removal, should be in favor of removal, without any further action on the part of the legislature. It is contended on the part of the relator, that the constitution gives the legislature power to remove the county seat, only when a majority of the votes of the county have voted in favor of the removal. Hence, the relator contends, that this must be done before the legislature can pass an act to provide for the removal.

The clause of the constitution relied upon to sustain this position, is as follows (*Art.* 13, § 8): "No county seat shall be removed, until the point to which it is proposed to be removed, shall be fixed by law; and a majority of the voters of the county, voting on the question, shall have voted in favor of its removal to such point." We think this clause of the constitution is complied with, if the point to which it is proposed to remove the county seat is fixed by law, and the voters vote in favor of the removal, before the removal takes place in fact. This is done by the act in question, which provides for the removal of the county seat to Avon, in case a majority of the voters of the county should vote in favor of the removal. The legislature is not prohibited from passing an act which provides for the removal of a county seat (in case a majority of the voters of the county vote in its favor), before the vote is taken. It is enough if the removal itself does not take place until a majority of the voters have so voted.

We will now proceed to notice the third point relied upon by the relator, which is, that the question of the removal of the county seat from Shullsburg to Avon, has not been determined in favor of such removal by a majority of the voters of the county voting on the question.

The provision of the constitution above quoted is clear and explicit, and by it the legislature is prohibited from removing a county seat, until a majority of the voters of the county, voting on the question, shall have determined in favor of the removal. By the word "voters," as that term is used in this section of the constitution, we suppose are meant legal voters, those who have

a right to vote at the elections held for the purpose of choosing state officers. This position seems so plain, that we shall forbear any attempt to maintain it by elaborate argument.

A reference to the constitution (*Art.* 3, § 1), shows that these are persons who are required to reside in the state, one year, next before the election at which they vote. If they possess the other qualifications specified in the constitution, and have resided in the state one year next preceding any election, they are allowed to vote at such election. It is contended by the relator, that the act of the legislature which authorized the voters of the county to vote on the question of the removal of the county seat from Shullsburg to Avon, did not permit persons to vote who possessed the qualification as to residence in the state, which the constitution prescribes; so that the legal voters of the county have never had an opportunity to vote on the question of the removal.

The first section of the act of the legislature in question provides that the "qualified electors of the county of La Fayette" shall be authorized to vote, &c., but the third section provides that "no person shall be deemed qualified to vote upon the question of the removal of the county seat, provided for in this act, unless he shall have resided in the town where he offers his vote at least thirty days (and who is not a permanent resident of the county) previous to the first day of April, A. D. 1856." As the first day of April was the day fixed in the act for taking the vote, it will be seen that the act requires every person who should vote on the question of removal should have resided in the town where he offered to vote thirty days previous to the time when the vote was taken. It was contended on the part of the respondent that this provision of the act was in accordance with the constitution, and that if it was a violation of that instrument, still the vote which was taken should have the same effect given to it as though the qualifications of the voters, as fixed in the act, had been the same as those prescribed in the constitution, unless it appeared that persons who possessed the constitutional qualifications of voters had offered to vote at the election in sufficient numbers to change the result, and had been

prevented from voting, on the ground that they had not resided in the town where they offered to vote thirty days previous to the election.

We have no doubt that the qualifications of the voters as fixed by the act are, in respect to residence in the state, quite different from those prescribed in the constitution. The latter instrument is explicit; it provides in express terms that a person who possesses the other qualifications mentioned, and who has resided in the state one year next preceding any election, shall be deemed a qualified elector at such election.

It seems to us clear, that by requiring a residence of thirty days in the town where the elector offers to vote, the legislature have added a qualification not contained in the constitution, and which is repugnant to its provisions. The constitution provides, that if a person possesses certain qualifications, and has resided in the state one year next preceding any election, he shall be deemed a qualified elector at such election; while the act of the legislature in question provides, in effect, that this shall not be sufficient, but that he shall, in addition, have resided for thirty days previous to the time when the election is holden in the town where he offers his vote.

We have no doubt that the legislature have the power to provide that a person who has a right to vote under the constitution shall be allowed to exercise this right only in the town where he resides, because this would be only to prescribe the place where a right which he possessed under the constitution shall be exercised, and fixes upon the most convenient place for its exercise. Such a provision does not add to the qualifications which the constitution requires; but an act of the legislature which deprives a person of the right to vote, although he has every qualification which the constitution makes necessary, cannot be sustained.

We will now proceed to inquire what effect this provision of the act of the legislature in question must have upon the vote which was taken upon the subject of the removal of the county seat from Shullsburg to Avon.

It is contended by the respondant, that full effect should be

given to the vote, unless it appears that a number of persons sufficient to change the result, and who were legal voters by the constitution, were prevented from voting by force of the act of the legislature.

We do not think that this view of the matter can be sustained. The question is, whether the legal voters of the county have had an opportunity to express their wishes for or against a removal of the county seat of the county. If the act of the legislature had submitted the question to the legal voters of the county, then a most material question of fact might have arisen in regard to the qualifications of those who were allowed to vote, or whose votes were refused by the inspectors of election. But the act of the legislature in question, in express terms prohibited persons from voting, although they had all the qualifications which the constitution requires. They, therefore, were not allowed by the act to vote, and if they had offered to do so their votes would not have been received. It follows that the legal voters of the county had no opportunity given them by the act to vote on the question; in other words, the question of the removal of the county seat was not submitted to the legal voters of the county, and the vote which has been taken cannot, for this reason, show whether those who, by the constitution, must give their assent to the removal before it can take place, are in favor of or against it.

We must therefore hold, that the county seat has not been changed from Shullsburg to Avon, and for this reason award a peremptory mandamus.

Mandamus awarded.