ALLEN, J., dissenting.
The regular December term of Randolph should have opened on Monday, 3 December, 1917. At that time Hon. E. B. Cline, the judge holding the courts of the district, being still engaged in the (811) trial of Gaston B. Means for murder in Cabarrus, addressed the following letter to the sheriff of Randolph.
CONCORD, N.C. 30 November, 1917.
To the Sheriff of Randolph County, N.C.
Confirming my message to you of this date you are ordered and directed to adjourn the approaching term of the Superior Court of Randolph from Monday, 3-15 December, to begin on Monday, 10 December, 1917, which is Monday of the second week of the term, this order being made by reason of the fact I shall be compelled to continue in court here during next week and neither I nor the solicitor can be in Randolph before 10 December.
Please make this known to attorneys, jurors, and witnesses as soon as possible, certainly not later than next Monday morning at the court house door. All witnesses should be directed to return 10 December. The first week's jurors are excused, but there should be as many as 24 summoned for the second week and 36 would be better if they can legally be had.
E. B. Cline, Judge Presiding.
Subsequently the Governor issued a commission in regular form to Judge G.S. Ferguson, of the Twentieth Judicial District, reciting:
"Whereas, it has been made to appear to the satisfaction of His Excellency, the Governor, that the Hon. E. B. Cline, assigned by law to *Page 859 
hold the regular term of the Superior Court for the county of Randolph, in the Fifteenth Judicial District, is unable to do so by protracted illness or unavoidable accident:
"Now therefore, I, T. W. Bickett, Governor of the State of North Carolina, by virtue of authority vested in me by article 4, sec. 11, of our State Constitution, do hereby require and commission you to hold the regular term of the Superior Court for the county aforesaid, beginning on Monday, the 10th day of December, 1917, for one week."
The defendant entered a plea in abatement on the following grounds: "The bill of indictment was not found by a legally constituted body. The defendant is not informed whether this term of the court is a regular or a special term. The board of commissioners did not give thirty days notice of said term of court as provided by statute, and failed to draw a jury for said term of court as provided by statute, and there was not 18 jurors drawn for a grand jury by a child not 10 years of age. That the 16 jurors who were serving as grand jurors are of the jurors drawn for the second week of the term and were not drawn for grand jurors for the first week, and the men serving were all drawn for the second week; that the Governor did not notify the chairman of the board of county commissioners of the present called term of this court and give him an opportunity to draw a jury according to law in that there was not thirty days notice given in the newspaper (812) according to law, as defendant is informed and believes."
1. That if this term of the court is not a special term, but is a regular term, the same is not sitting according to statute; that the sheriff had the right to open the court from day to day till the fourth day of the term, and then the term should have continued to Monday of this week, and on Monday of this week the judge did not appear, then the court stood continued till the next term of the court.
2. That if the court was called by the Governor, as defendant is informed, he could not order an exchange of courts between Judge Cline and Judge Ferguson under the statute when Judge Cline was holding court in the district in which Randolph County is a part of the same organization of the court.
3. That W. C. Hammer is prosecuting the docket as solicitor and is holding and filling the office of the district attorney for the United States, which is an office of trust and profit within the meaning of the Constitution, and his acts as such solicitor are null and void as he could not hold two offices at the same time, and that the solicitor for the State has no right to delegate the duties of his office to another person. *Page 860 
4. That there was not 18 members of the grand jury at the term of court when the bill was found; that there was only 16 of said grand jurors, and that they were not drawn by a child under 10 years old, but were called into the box and charged.
The judge overruled the plea and found the following facts:
"That Judge Cline, who is assigned by law to hold the regular term of this court, is engaged in the trial of a capital case in the county of Cabarrus, and the Governor of the State called upon and requested Judge Ferguson, the present presiding judge, to hold this week of court for Judge Cline, and that Judge Ferguson was unable to reach the court on Monday and so notified the sheriff that the court would open on Tuesday. Upon the opening of the court Tuesday morning it is ascertained that the jury for the first week had been notified they need not attend the second week of court by Judge Cline; that on calling over the jury, the judge ascertained that there were only 16 jurors in attendance upon the court who were drawn by the county commissioners to serve for the second week of the term, and being of the opinion that the grand jurors should be drawn by the county commissioners from the regular jury box the 16 men were impaneled and charged as grand jurors without the form of having a child to draw their names from the box.
(813) "Hayden Clement, solicitor for the judicial district, is engaged as solicitor in the prosecution of a capital case, S. v. Means, in the county of Cabarrus, and that he requested W. C. Hammer, attorney of this court, to represent him at this term of court, the said Hammer being United States District attorney for the Western District of North Carolina, and the court designated and requested the said W.C. Hammer to represent the State as solicitor during the term of court and made the record that he was appointed to act as solicitor during the term."
Upon the foregoing findings of facts by the court the plea in abatement is overruled, and the defendant excepts.
After verdict of guilty was rendered, the defendant moved in arrest of judgment on the same plea in abatement, which being refused, the defendant excepted, and from the sentence imposed appealed.
There are no exceptions to the evidence or the charge or to the merits in any way. The defendant's exceptions are all based *Page 861 
upon the plea in abatement, which are, as stated in the defendant's brief, substantially as follows:
1. "That the term should have begun on 3 December, 1917, and the sheriff had power only to adjourn from day to day until the fourth day of the term, and if the judge did not appear the court should have been adjourned till the next term, and that the action of the court held the following week was therefore a nullity."
Revisal, 1510, authorized the sheriff to take the above action, but there is a provision also in that section, "Unless the sheriff shall be sooner informed that the judge from any cause cannot hold the term." This includes, by uniform custom and from the nature of the case, an instruction from the judge to adjourn to any later day in the term. This not infrequently happens by reason of the sickness of the judge or other engagements, as in this case. The judge here instructed the sheriff to adjourn the court till the following Monday, and this action was within his authority. In McNeill v. McDuffie, 119 N.C. 336, where the judge was detained, as in this case, by holding court in another county (Richmond), he instructed the sheriff of Cumberland to adjourn that court till the second Monday, and this Court held "The judge may appear on any day within the two weeks (if the court has not been previously adjourned), and that part of the term actually held will be as valid as if court had been opened on the day fixed by the statute," saying "It can make no difference what was the (814) cause of the judge's absence, whether illness or attending to official duties elsewhere. The material and only essential facts are that the judge designated by law to hold the court appeared within the time prescribed and held it, the court not having been previously adjourned (in consequence doubtless of directions given to the sheriff by the judge)."
If, however, the judge had given no such directions, and it was a matter of fact, as in this case, that the sheriff "had not adjourned the court till the next term and the judge afterwards in the second week actually appeared and held court, his action would be valid." Norwood v. Thorpe,64 N.C. 682, which has been cited since with approval inMcNeill v. McDuffie, supra, and other cases. If therefore, Judge Cline had appeared and held the court on the second Monday it would have been in every respect a valid term.
2. "Judge Ferguson could not hold the term of the court by exchange with Judge Cline, the regular judge of the district, who was then holding court in Cabarrus."
In this case if the judge who should have held the term was detained by illness or for any unavoidable cause, as was the case, it was *Page 862 
within the power of the Governor to assign Judge Ferguson to hold the second week of the term, or the whole term. S. v. Lewis, 107 N.C. 967, is exactly on all-fours. In that case the judge was not detained by official business, as in this case, but the judge (Shipp) had died and the Governor, instead of appointing his successor immediately, in the public interests, thought best to delay such action and assigned Judge Whitaker to hold the second week of the term.
This Court in a very full and satisfactory opinion, which has been repeatedly cited since as unquestioned authority, as follows: "Where the Governor issues a commission to one of the judges of the Superior Court, authorizing him to hold certain terms of the Superior Courts, and the judge undertakes to discharge the duties required of him, he is a de facto judge, even if the commission was issued without authority of law. Where the Constitution has clothed the Governor with the power to require a judge to hold a court in a district; other than that to which he is assigned by the general law, upon certain conditions as to the fulfillment of which the Governor must of necessity be the judge, and the Governor issues the commission, the Supreme Court will assume that in fact the emergency sanctioned the issuing of the commission, which will be held valid if the Governor could have for any reason lawfully issued it."
Judge Cline not being able to hold the court, there was no reason or law forbidding the Governor to assign another judge to hold the term, and there is no prohibition against two courts being held at the same time in the same district, which often happens.
(815) Judge Ferguson was a judge of the Superior Court de facto and de jure and had the same authority, by virtue of the Governor's commission to hold the term, in the same manner Judge Cline could have done. In S. v. Watson, 75 N.C. 136, which is quoted in S. v.Lewis, the Court said: "The Governor is not bound to assign any reason in the commission or to this Court. As to all the world, except the Legislature, he is the final judge of the fitness of his reasons."
In S. v. Lewis, supra, the Court said: "If Judge Whitaker was acting either de jure or de facto as judge of the Superior Court of Rockingham in opening and organizing that court and in presiding at the trial of the defendant until the jury returned a verdict of guilty, it was error to allow the motion of the defendant and enter the order arresting the judgment."
This case is even stronger against the defendant than that, for there Judge Skipp having died the Governor might have appointed his successor instead of assigning Judge Whitaker to hold the second week of that term. In this case the trial for homicide in S. v. Means not being *Page 863 
concluded in Cabarrus, under Revisal, 3266, that term of court was kept open, and unless the Governor could assign some other judge there would have been no term of court held for Randolph at the regular term as required by law.
Among the many cases citing S. v. Lewis are S. v. Turner, 119 N.C. 841, where it was held: "A judge of the Superior Court who presides in another district by appointment of the Governor is a de facto judge of the court so held, and all his acts in that capacity are valid." That case cites as authority also Cloud v. Wilson, 72 N.C. 155, where the Court held that the acts of Judge Wilson in holding court were valid because he was a de facto
judge, though it was finally determined that Judge Hilliard was de jure
judge during that time.
In S. v. Register, 133 N.C. 749, which cites S. v. Lewis and S. v.Turner, supra, it is held that the power of the Governor to order a judge to hold the term of the court "is not restricted in instances where there is an accumulation of business, nor when such facts is recited as a reason in the commission is the power of the judge restricted to the trial of indictments found before that term."
In S. v. Hall, 142 N.C. 710, Walker, J. sustained the validity of the action of Judge Long is holding the term of Rowan notwithstanding the extraneous evidence offered that the commission to him to hold such extra term was issued in the name of the Governor, who was absent at the time from the State.
This case is not like S. v. Shuford, 128 N.C. 588, where the action of the court was held invalid because the statute creating the criminal district was invalid. But even in that case it is said that the person there "attempting to perform the duties of such alleged office (816) was neither de facto nor a de jure officer, and hence his acts were null and void," adding, "In S. v. Lewis, 107 N.C. 967, the judge was one of the Superior Court judges of the State. The only question was as to the legality of his assignment to hold that term. It was held (p. 592) that he was a de facto officer and his acts could not be questioned by a motion in arrest of judgment."
3. "That the term held by Judge Ferguson could not be a regular term, but was necessarily a special term, and was invalid because there was no grand jury drawn for the special term, and no advertising made, as required by law."
This was the regular term of Randolph Superior Court. The commission to Judge Ferguson so states. It was begun and held for the second week only, and Judge Ferguson by assignment of the Governor held it in lieu of Judge Cline, who could have held it but for detention by other official duties. That the action of Judge Ferguson was valid is *Page 864 
fully settled in S. v. Lewis, supra, where Judge Whitaker held the second week of Rockingham in lieu of Judge Shipp, who had just died.
4. "That the judge erred in calling the jury for the second week in the box as grand jurors when they were summoned merely as trial jurors, and besides they were not drawn by a child less than 10 years old."
It is presumed, and is not denied, that, according to the usual custom, the judge questioned the jurors as to their qualifications, and they all answered that they were freeholders and had paid their taxes. Being only 16 in number, it would have been a vain thing, and childish indeed, to put 16 names in the hat and require a child 10 years old to draw out the same 16 names. The jurors were regularly drawn from the box in the manner prescribed by Revisal, 1959. There is nothing in that section which prescribes that only the jurors drawn for the first week shall serve on the grand jury. It may often happen, and has happened, that the court does not begin till the second week. If Judge Cline has been able to attend the second week it would have been entirely proper for him to have taken these jurors, regularly drawn from the box, for the grand jury and to have filled out the defect of jurors for the petty jury by summoning talismen. S. v.Manslip, 174 N.C. 798.
5. "That the grand jury was illegal because there was only 16 serving instead of 18."
Twelve is a legal grand jury, but not less than twelve must concur in finding the bill. S. v. Barker, 107 N.C. 913, where the whole matter was fully discussed with a history of the grand jury by Shepherd, J.
In S. v. Perry, 122 N.C. 1022, it is said: "An indictment is (817) valid if there are only 12 grand jurors (S. v. Davis, 24 N.C. 153; S. v. Barker, 107 N.C. 913), provided all 12 concur in finding the bill, as must be the case even when 18 grand jurors are present, and the presumption of law is that the indictment was properly found in the absence of a plea in abatement on that ground and proof (S.v. McNeill, 93 N.C. 552)," and there is no allegation even here that 12 grand jurors did not concur in finding the bill. There is not statute or custom that "not less (nor more) than 18 constitute a grand jury."
In S. v. Brittain, 143 N.C. 669, Brown, J., says that "What is meant by the terms `jury' and `grand jury,' as used in the Constitution, is fully defined in the learned opinion of Mr. Justice Shepherd in S. v. Barker,107 N.C. 914, but the methods by which the jurors are to be selected and summoned is nowhere prescribed by our Constitution, and we find no limitation therein upon the power of the General Assembly to regulate it." *Page 865 
 S. v. Paramore, 146 N.C. 606, relied upon by the defendant, is not in point. That case held that while the provisions of the statute for drawing and summoning jurors are directory, the grand jury is illegally constituted when one whose name was not drawn from the boxes was summoned by mistake and served by mistake. In this case these jurors were regularly drawn from the box, were duly qualified and served. No jurors when drawn from the boxes are designated as grand jurors or petty jurors, and the judge properly took the 16 regularly drawn, who attended for the grand jury, and directed talismen to be summoned for the petty jury. S. v. Manslip,174 N.C. 798.
The whole matter is fully discussed by that eminent jurist Gaston, J., in S. v. Davis, 24 N.C. 153, in which he says: "The other ground taken for this motion is for that it appears upon the record that the grand jury who found the indictment was constituted of 15 jurors only. The argument in support of this objection is that by the express words of Revised Statutes, ch. 31, sec. 34, the grand jury must consist of 18 jurors; that under the Constitution of this State no freeman can be put to answer any criminal charge but by indictment, presentment, or impeachment; that an indictment is a written accusation found by a grand jury, and that the accusation which has been received as an indictment in this case is not an indictment because not found by a grand jury legally constituted.
"We do not doubt but that it is competent for the Legislature to declare that although a bill be found by 12 of a grand jury the accused shall not be put upon his trial, and that the bill so found shall not be deemed an indictment unless the grand jury consisted of 18 jurors. Such an act of legislation would not infringe any of the rights or liberties secured by the Constitution, but would be a regulation for the enjoyment of them under the Constitution. The question is, (818) Has the Legislature made such a declaration or any enactment tantamount to such a declaration?
"The words of the section referred to are: "The judges of the Superior Courts and the justices of the county courts shall direct the names of all the persons returned to serve as jurors at the terms of their respective courts to be written on scrolls of paper which shall be put in a box or hat and drawn by a child under 10 years of age, and the first 18 drawn shall be a grand jury for said county, and the residue of the names in the box or hat shall be the names of those who are to serve as petit jurors for said court.' These words, it is obvious, are directory to the judges and justices of the courts in regard to the manner in which the grand and petit juries shall be formed out of the persons returned generally as jurors on the original venire. First, a *Page 866 
sufficient number, 18, shall be drawn by lot out of the whole number returned for the grand jury, and those not so drawn shall serve as petit jurors.
"It does not in terms declare that a grand jury constituted of less than 18 shall be insufficient to find a bill. It does not purport, otherwise than necessarily results from the directions so given, to add to or in any way modify the operation of the ancient rule in regard to the necessary number of a grand jury; and it cannot be believed that if any addition to or modification of the exercise of this so important rule were intended, but that it would have been distinctly and unequivocally announced. It simply gives the directions, but is silent as to the effect which may result from inattention to or nonobservance of them in any particular.
"It cannot be pretended that the rule is not yet in full force that a bill may be found on the presentment of 12 only of a grand jury. Now it would seem a singular anomaly that the concurrence of 12 out of 18 is sufficient to prefer an accusation, but that 12 out of 15 is undeserving of notice."
In Brucker v. State, 16 Wis. 356 (quoted in S. v. Lewis, 142 N.C. 643),Dixon, C. J. discussing the right of the Legislature to provide that 17 persons might compose the grand jury, said: "The foundation of the objection is that this was the rule at common law (that the grand jury should consist of not more than 23 or less than 12) recognized by the Constitution, against which the Legislature had no power to provide. Upon an examination of the authorities, we find no such fixed common-law principle. The only inflexible rule with respect to numbers seems to have been that there could not be less than 12 nor more than 23. The concurrence of 12 necessary to find a bill, and there could not be more than 23, in order that 12 might form a (819) majority. . . . We are of the opinion, therefore, that it is competent for the Legislature, within the limits prescribed by the common law, to increase or diminish the number of grand jurors to be drawn and returned without infringing the rights of the accused granted by the Constitution."
In this State at the time the Constitution of 1868 was adopted a trial jury consisted of 12 men, neither more or less, and as to a grand jury it was required only that "not less than 12 should concur," so that a conviction was practically had by two full panels of 12 men. Long before 1868 (in 1779, ch. 157, sec. 11) the grand jury had been reduced to consist of not more than 18 nor less than 12 men, as is still the case (Revisal, 1969), and, as Judge Gaston says, the number might be reduced to a lesser number — not less than 12. *Page 867 
The historians of the common law say that when the grand jury was first instituted at the Assizes of Clarendon in 1166 it consisted of 36 men — 20 from the Hundred and 4 each from the four nearest Vills — though in course of time the number was diminished by custom to "not more than 23 nor less than 12." And that when the first petty jury trial was instituted nearly two centuries later, in 1350, the trial jury consisted at first of the witnesses, and the number varied during a century or more, and unanimity was not at first required. But in process of time the number hardened into 12 and unanimity became necessary, which is certainly the jury intended by our Constitution, though this has been varied in other States by constitutional provisions reducing the number to 8 in one or more States and the abolition of the requirement of unanimity in several States.
The defendant relies upon Moore v. Guano Co., 130 N.C. 230, but that merely holds that Revisal, sec. 1959, is mandatory, and not directory, that the names of the jurors shall be written on scrolls and drawn from the jury box. This was done as to the 16 jurors who attended court and who sat as grand jurors in this case.
As to grand jurors, as well as pretty jurors, the defendant has no right to select, but merely to object, to a juror, and on this occasion no man served as a grand juror who was not properly drawn in accordance with the requirements of law, or to whom the defendant had any legal ground of challenge.
6. The last exception was upon the ground that the court assigned W.C. Hammer, a member of the bar, to prosecute for the State in the necessary absence of Hayden Clement, the solicitor of the district, urging that he was incompetent to act because he held the office of United States District Attorney, and under our Constitution, Art. XIV, sec. 7, no person can hold two offices. Such appointment was a matter of necessity, and has been a recognized custom when the solicitor for any reason is absent (S. v. Conly, 130 N.C. 683), and there (820) is an express statute recognizing the custom and extending it to the lamentable case when the solicitor though present in court is not in a condition to act. Revisal, 1499. Such appointment does not make the temporary representative of the State an officer (Borden v. Goldsboro,173 N.C. 661), for it did not prejudice the defendant in any way or deprive him of a due trial according to law. Moreover, even if it had made the appointee an officer, his acceptance would not have made the conviction invalid, but merely would have vacated his previous office, not the second one. Barnhill v. Thompson, 122 N.C. 493; Midgett v.Gray, 158 N.C. 445. *Page 868 
The Attorney-General insists that while a plea in abatement is valid (Revisal, 3239) when the exception is on the ground of improper venue, which is merely a motion to remove to the proper county (S. v. Lewis,142 N.C. 632), that exceptions to the grand jury must be taken "by motion to quash the indictment, and if not so taken, the same shall be deemed to have been waived." This is indeed the requirement in Revisal, 1970.
This is a "refinement," for the intent of the defendant was to make his objection upon the grounds stated, and it is not material whether the defendant called it a motion to quash or a plea in abatement. We will treat it for what it is, and not what it was called, for while the provisions of Code, 3254 and 3255, prohibiting reliance upon such technicalities applies only against defendants, it is in accordance with the spirit of the statute that it should be invoked in their favor also.
The refusal of the motion is
Affirmed.
Cited: S. v. Simmerson, 177 N.C. 546; S. v. Davis, 177 N.C. 579; S. v.Mallard, 184 N.C. 670; S. v. Stewart, 189 N.C. 344; S. v. Berry,190 N.C. 364; Chemical Co. v. Turner, 190 N.C. 473; S. v. Montague,190 N.C. 843; S. v. Graham, 194 N.C. 466; S. v. Barkley, 198 N.C. 351;Harris v. Watson, 201 N.C. 665; S. v. Lea, 203 N.C. 26; Grimes v. Holmes,207 N.C. 299; S. v. Boykin, 211 N.C. 411; S. v. Peacock, 220 N.C. 64; S. v.Morgan, 225 N.C. 550; Edwards v. Board of Education, 235 N.C. 351; S. v.Gaston, 236 N.C. 502; S. v. Honeycutt, 237 N.C. 598; S. v. Brady,238 N.C. 410; S. v. McGowan, 243 N.C. 433.
(821)